[No. B013474. Second Dist., Div. One. Jan. 31, 1986.]

ROBERT CHRISTOPHER WIEMANN, Plaintiff and Appellant, v. INDUSTRIAL UNDERWRITERS INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Rolf M. Treu for Plaintiff and Appellant.

Flahavan, Hudson & Francis and William John Rea, Jr., for Defendant and Respondent.

**OPINION**

**HANSON (Thaxton), J.—**

INTRODUCTION

Petitioner Robert Christopher Wiemann (Wiemann), claiming uninsured motorist coverage, appeals from the order of the superior court (Hon. Peter S. Smith, judge) denying his petition to compel respondent Industrial Un-

derwriters Insurance Company (Industrial Underwriters) to enter into binding arbitration pursuant to Insurance Code section 11580.2.[1] We affirm.

## FACTS

The facts are not in dispute. Petitioner Wiemann alleges that he was injured while driving a motor vehicle owned by James Nelson in a collision with another vehicle driven by Robert Otto Schulze, an uninsured motorist. The owner of the vehicle which Wiemann was driving had liability insurance through an organization known as Merchant's Home Delivery Service, Inc. (Merchant's Home Delivery Service) which was provided insurance coverage through Industrial Underwriters with a $25,000 self-insured retention. Merchant's Home Delivery had not obtained self-insurance approval from the Department of Motor Vehicles (D.M.V.). Industrial Underwriters' excess policy did not contain a provision providing uninsured motorist coverage.

Petitioner Wiemann filed suit in the superior court against the uninsured motorist (Robert Christopher Wiemann v. Robert Otto Schulze, case No. EAC 48052) and then filed a petition seeking to compel Industrial Underwriters to engage in binding arbitration. The superior court denied the petition. Notice of appeal was timely filed.

## ISSUE

The determinative issue on appeal is whether or not under applicable statutory or decisional law respondent Industrial Underwriters' policy of insurance provides uninsured motorist coverage to petitioner Wiemann.

Wiemann argues that even though Industrial Underwriters' policy does not provide uninsured motorist coverage by its terms, that such policy must be construed to provide such coverage pursuant to section 11580.2.

## DISCUSSION

■ We deem an order denying a petition to compel arbitration under an automobile liability policy concerning an uninsured motorist claim, as present here, to be an appealable order. (See Code Civ. Proc., § 1294, subd. (a); *Pagett* v. *Hawaiian Ins. Co.* (1975) 45 Cal.App.3d 620 [119 Cal.Rptr. 536]; *Smith* v. *Superior Court* (1962) 202 Cal.App.2d 128 [20 Cal.Rptr. 512].)

---

[1] Unless otherwise indicated, all section references are to the Insurance Code.

Section 11580.2 provides in relevant part as follows: "(a)(1) No policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle . . . shall be issued . . . unless the policy contains, or has added to it by endorsement, a provision . . . insuring the insured . . . for all sums within such limits which he . . . shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle. . . . *A policy shall be excluded from the application of this section . . . if the automobile liability coverage is provided only on an excess or umbrella basis.*" (Italics added.)

The policy of insurance, issued by respondent Industrial Underwriters to the Merchant's Home Delivery organization, under the caption heading "SELF-INSURED RETENTION ENDORSEMENT," in relevant part contains the following provisions: "(A) The total liability of the Company for all damages shall not exceed the limits of liability as stated in the Policy Declarations, Coverage Parts or Endorsements attached thereto *and shall apply in excess of the Insured's self-insured retention (hereinafter called the Retained Limit).* (Italics added.) RETAINED LIMIT—*TWENTY-FIVE THOUSAND* Dollars (*$25,000*) Each occurrence."

■ We hold that the policy of insurance issued by Industrial Underwriters to the Merchant's Home Delivery organization provides "excess" or "umbrella" coverage within the meaning of section 11580.2, and does not provide uninsured motorist coverage to petitioner Wiemann. Our reasoning follows:

■ " '*Excess*' or *secondary* coverage is coverage whereby, *under the terms of the policy,* liability attaches only after a predetermined amount of primary coverage has been exhausted.[2] . . . Secondary insurance is sometimes referred to as 'umbrella' insurance." Footnote 2 of the quoted passage provides, "[a] secondary insurer thus greatly reduces his risk of loss. This reduced risk is reflected in the cost of the policy. (See *Signal Companies, Inc.* v. *Harbor Ins. Co.* (1980) 27 Cal.3d 359, 365 [165 Cal.Rptr. 799, 612 P.2d 889, 19 A.L.R.4th 75].)" (*Olympic Ins. Co.* v. *Employers Surplus Lines Ins. Co.* (1981) 126 Cal.App.3d 593, 598 [178 Cal.Rptr. 908].)

■ Here, the terms of Industrial Underwriters' insurance contract (policy) with Merchant's Home Delivery, unambiguously on its face, under the caption "SELF-INSURED RETENTION ENDORSEMENT," clearly states that it "shall apply in excess of the Insured's self-insured retention (hereinafter called Retained Limit)." The "RETAINED LIMIT" is spelled out as "TWENTY-FIVE THOUSAND DOLLARS (*$25,000*) Each occurrence." Clearly, by its

unambiguous terms, the policy provides "excess" or "umbrella" coverage within the meaning of section 11580.2.

The major operative facts in *O'Sullivan* v. *Salvation Army* (1978) 85 Cal.App.3d 58 [147 Cal.Rptr. 729] are substantially analogous to those in the case at bench.

In *O'Sullivan, supra,* plaintiff O'Sullivan allegedly suffered personal injuries while riding as a passenger in a motor vehicle owned by the Salvation Army and being operated by one of its employees when that vehicle was struck in the rear by an uninsured motorist. The Salvation Army organization (like the Merchant's Home Delivery Service organization in the instant case) was self-insured and had a policy of liability insurance issued by Eagle Star Insurance Company (here Industrial Underwriters) in excess above the amount for which the Salvation Army was self-insured. The Salvation Army organization possessed a valid certificate of self-insurance issued by the D.M.V. in accordance with Vehicle Code sections 16052 and 16053. Neither this certificate nor Eagle Star's excess policy contained a waiver of uninsured motorist coverage.

In *O'Sullivan, supra,* both the self-insured Salvation Army organization and the excess carrier, Eagle Star, refused to honor O'Sullivan's uninsured motorist claim whereupon he filed a declaratory relief action. The trial court sustained the demurrer brought by the Salvation Army and Eagle Star based on the ground of failure of the complaint to state facts sufficient to constitute a cause of action.

The Court of Appeal, in *O'Sullivan, supra,* affirmed the trial court. In a well-reasoned opinion the court held, in respect to the Salvation Army, that the obligations of a self-insurer are different from those of an insurance company, and section 11580.2, subdivision (a), defining the obligations of an insurance carrier to include uninsured motorist coverage in all motor vehicle liability policies, has no bearing on the obligations of a self-insurer.

The Court of Appeal also held that Eagle Star, who provided excess coverage, did not extend coverage for uninsured motorist liability as a matter of law. The court held that O'Sullivan was not entitled to receive compensation from the Salvation Army organization's excess insurer because by the terms of its coverage the insurer became liable only when the self-

insured's liability exceeded its coverage, and the self-insurer had no uninsured motorist coverage, nor was it required by law to carry any.[2]

Petitioner argues that an uninsured motorist provision should be written into the Industrial Underwriters' excess policy by this court since the Merchant's Home Delivery organization was not registered with the D.M.V. as a valid self-insured entity. The fact that Merchant's Home Delivery did not possess a valid certificate of self-insurance on file at the time of the accident is irrelevant to the issue presented here. While Merchant's Home Delivery may have been in violation of the financial responsibility laws of California's Vehicle Code, it does not mean it was in violation of California's Insurance Code. Merchant's Home Delivery's failure to obtain a valid D.M.V. certificate as a self-insurer pursuant to Vehicle Code section 16053, subdivision (a) does not create an obligation on the part of the excess insurer, Industrial Underwriters, to provide uninsured motorist coverage. Petitioner has not supplied this court, nor has our research disclosed, any statutory or decisional law which imposes on an excess carrier (such as respondent Industrial Underwriters) the duty to supply uninsured motorist coverage or to require its self-insured policyholder (here Merchant's Home Delivery) to first obtain such a certificate from the D.M.V. before issuing an excess coverage policy.

Nor can this court, as urged by petitioner Wiemann, hold that the Industrial Underwriters' excess policy should afford him uninsured motorist coverage based on broad public policy. This we refuse to do.

Language in *O'Sullivan* v. *Salvation Army, supra,* 85 Cal.App.3d 58 rejecting O'Sullivan's argument that the self-insured Salvation Army organization should supply uninsured motorist coverage is applicable to the instant case which is directed at the excess carrier, Industrial Underwriters. The *O'Sullivan* court stated at pages 61 and 62: "We see no room for argument that, in enacting the financial responsibility and uninsured motorist laws, the Legislature intended a broad and comprehensive scheme to protect those using the highways from the ravages of the negligent, financially irresponsible driver of a motor vehicle. It is equally clear that the enacting of such

---

[2]In *O'Sullivan, supra,* in respect to the excess carrier Eagle Star, the court stated at page 64: "It follows as a matter of law that the Eagle Star policy extends no coverage whatsoever for uninsured motorist liability. The Army's obligation as a self-insurer under the financial responsibility laws and O'Sullivan's right, if any, under uninsured motorist coverage, are both the same—$15,000. (Veh. Code, §§ 16053, 16056; Ins. Code, § 11580.2, subd. (a)(1).) Under such circumstances Eagle Star cannot be required to respond to O'Sullivan under an excess policy for an obligation of the [Salvation] Army created by the financial responsibility laws. By its terms Eagle Star's coverage becomes applicable only when the [Salvation] Army's liability exceeds its retention as a self-insurer irrespective of whether the excess results from an extension of uninsured motorist coverage concept or otherwise."

a statutory scheme is a legislative function. The scheme is to be broadly construed in light of underlying policy consideration to insure its application as intended by the Legislature. As a corollary it is clear that broad construction by the courts in applying the statutes does not entail judicial legislation in the course of determining legislative intent. The argument advanced on behalf of [Wiemann] must fail because to hold the [excess carrier, Industrial Underwriters] financially responsible in this case would require us to exceed the limits of statutory interpretation and legislate in the area of financial responsibility. In reaching this conclusion we envisage no need to interpret but only to follow and apply the existing law."

Indeed, as hereinbefore discussed, section 11580.2 specifically excludes from its application automobile liability coverage provided on an "excess or umbrella basis." If they deem it advisable for public policy reasons, the Legislature or the people through the initiative process may alter section 11580.2 to delete this specific exclusion. It is not the function of this court to do so.

### DISPOSITION

The judgment (order) is affirmed.

Pitts, J.,* concurred.

Spencer, P. J., concurred in the judgment.

Appellant's petition for review by the Supreme Court was denied May 7, 1986.

---

*Assigned by the Chairperson of the Judicial Council.