**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a corporation, Plaintiff,**

v.

**LAWYERS' MUTUAL INSURANCE COMPANY, a California corporation, Defendants.**

**Civ. No. 94–1558 H (CM).**

United States District Court, S.D. California.

May 9, 1995.

James R. Rogers, Law Offices of James R. Rogers, Solana Beach, CA, for plaintiff National Union Fire Ins. Co. of Pittsburg, PA, a corporation.

Marie Ann LaSala, Mary Beth Sipos, Musick, Peeler and Garrett, Los Angeles, CA, for defendant Lawyers' Mut. Ins. Co., a California corporation.

## MEMORANDUM DECISION AND ORDER ADJUDICATING THE ISSUE OF NATIONAL UNION'S INSURANCE POLICY AS EXCESS INSURANCE

BATTAGLIA, United States Magistrate Judge.

Counsel for the parties have consented to the jurisdiction of Magistrate Judge Battaglia under 28 U.S.C. § 636(c) to decide the following issue: "Whether the policy issued by National Union at issue in this case is a policy of excess insurance excess over that policy issued by LMIC at issue in this case." The parties have submitted opening and reply briefs along with exhibits thereto and a hearing was held on May 3, 1995. Plaintiff's counsel was represented by John Boyce, Jr. of the Law Offices of James R. Rogers. Defendant's counsel was represented by Mary Beth Sipos of Musick, Peeler and Garrett. The matter having been heard and submitted, the Court finds that the National Union Fire Insurance Policy in issue is excess over the primary policy issued by Lawyers' Mutual.

### Background

This insurance coverage dispute stems from a settlement in an underlying legal malpractice action against Seltzer, Caplan, Wilkins & McMahan. Both Lawyers' Mutual and National Union contributed to the settlement of the underlying case against Seltzer, Caplan under their respective policies of insurance. National Union now seeks reimbursement from Lawyers' Mutual under a theory of equitable subrogation for monies paid by it toward settlement of the case.

It is undisputed that:

(1) The policy of insurance originally issued to Seltzer, Caplan by Lawyers' Mutual on March 13, 1989 provided limits of liability of $2,000,000 per claim and $4,000,000 in the aggregate. These liability limits were subject to a $10,000 deductible.

(2) The National Union policy of insurance, issued to Seltzer, Caplan on March 24, 1989, contains limits of liability of $7,000,000. According to the Declarations page of the policy, this liability limit was subject to a $250,000 deductible. Endorsement No. 1 of the National Union policy provided that the term "deductible" should be read to mean "self-insured retention." Therefore, the National Union policy provided for a self-insured retention of $250,000.

(3) After the inception of the National Union policy, Seltzer, Caplan requested that Lawyers' Mutual reduce the limits of liability provided by its policy to $250,000 per claim

and $750,000 in the aggregate. The $10,000 deductible remained. It is acknowledged by Lawyers' Mutual that its policy provided primary insurance coverage to Seltzer, Caplan.

The underlying case was eventually settled for $200,000. Because this settlement in the end exhausted the Lawyers' Mutual policy limits, National Union contributed $88,009.37 toward the settlement amount. The complaint alleges three causes of action: (1) for declaratory relief of relative rights and obligations under the relative policies; (2) for indemnity and contribution; and (3) for equitable subrogation.[1] The crux of National Union's complaint is that Lawyers' Mutual unnecessarily and unreasonably expanded the scope of the litigation, running up attorneys' fees, such that the $250,000 limits were exhausted. In addition, there are allegations that Seltzer, Caplan requested that Lawyers' Mutual settle the case within its policy limits, an amount of settlement which was apparently at one time demanded by plaintiff in the underlying case, which Lawyers' Mutual refused to do.

National Union claims in this case that the $250,000 self-insured retention makes its policy of insurance excess to the Lawyers' Mutual policy, as that policy has limits of $250,000. Counsel for Lawyer's Mutual argues, in contrast, that the National Union policy is not excess but rather is a co-primary policy with a $250,000 deductible. As such, Lawyers' Mutual argues that National Union was obligated to participate in an contribute to the defense of the underlying case and that they have no right now to come back and criticize how Lawyers' Mutual handled the defense.

### A. Is the National Union Policy of Insurance an Excess Policy?

#### 1. California Rules of Contract Construction

The construction of the National Union policy is governed by California law. Insurance policies, like other contracts, are to be construed so as to give effect to the mutual intention of the contracting parties. *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 544–45, 833 P.2d 545 (1992); Cal.Civ.Code § 1636. The first consideration in determining the proper construction of policy language is to the language of the policy itself. If that language is clear and explicit, it governs. Cal.Civ.Code § 1638. The language of the contract is to be construed as a whole, such that all portions are given meaning where possible. Cal. Civ.Code § 1649. The question for the court is whether the suggested construction of the policy language is consistent with the objectively reasonable expectations of the insured. *Bank of the West,* 10 Cal.Rptr.2d at 545, 833 P.2d at 552.

■■ In ascertaining the mutual intention of parties to a contract, extrinsic evidence of a parties' intention in formation of the policy of insurance is admissible to aid the court in its construction of ambiguous terms. The test of admissibility of extrinsic evidence is not whether the contract provisions appear unambiguous on their face. Rather, "[t]he test of admissibility of extrinsic evidence to explain the meaning of a written instrument is ... whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Gribaldo, Jacobs, Jones & Associates v. Agrippina Versicherunges A.G.,* 3 Cal.3d 434, 91 Cal.Rptr. 6, 11, 476 P.2d 406, 411 (1970) (citations omitted); *see also Garcia v. Truck Ins. Exchange,* 36 Cal.3d 426, 204 Cal.Rptr. 435, 682 P.2d 1100 (1984) (holding that the parol evidence rule does not bar admission of extrinsic evidence of meaning of policy terms where such evidence is relevant to prove a meaning to which the language is susceptible).

■ Excess coverage provisions of insurance policies are generally enforced. This is especially true where there is no reasonable expectation on the part of the insured of primary coverage, and where the rights of neither the insureds nor innocent accident victims are affected. *National American*

---

[1]. The complaint also contained a cause of action for breach of the implied covenant of good faith and fair dealing, but Judge Huff dismissed that cause of action because there is no contract between the two companies on which the action could be based.

*Ins. Co. v. Ins. Co. of North America,* 74 Cal.App.3d 565, 140 Cal.Rptr. 828, 835 (1977).

## 2. California Insurance Law Principles

■ Both counsel agree that the best description of the differences between primary and excess coverage is found in *Olympic Ins. Co. v. Employer's Surplus Lines Ins. Co.,* 126 Cal.App.3d 593, 178 Cal.Rptr. 908 (1981). According to the *Olympic Ins.* case,

> *Primary* coverage is insurance coverage whereby, *under the terms of the policy,* liability attaches *immediately* upon the happening of the occurrence that gives rise to liability.... *"Excess"* or *secondary* coverage is coverage whereby, *under the terms of the policy,* liability attaches only after a predetermined amount of primary coverage has been exhausted.

*Id.* 178 Cal.Rptr. at 910 (citations omitted). Where a policy of secondary insurance identifies particular policies over which it is written, the policy is said to be "specific excess." *Id.*

■■ A primary insurer generally has a duty to defend its insured. *Id.* In contrast, however, an excess insurer generally has no duty to participate in the insured's defense or contribute to a settlement on the insured's behalf until primary coverage has been exhausted. *Nabisco, Inc. v. Transport Indemnity Co.,* 143 Cal.App.3d 831, 192 Cal.Rptr. 207, 209 (1983); *Signal Companies, Inc. v. Harbor Ins. Co.,* 27 Cal.3d 359, 165 Cal.Rptr. 799, 612 P.2d 889 (1980); *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.,* 126 Cal. App.3d 593, 178 Cal.Rptr. 908 (1981).[2] It is clear that the duty to defend is the same under a policy written as excess over a self-insured retention. *Nabisco, Inc.,* 192 Cal. Rptr. at 210; *Aetna Cas. & Surety Co. v. Certain Underwriters,* 56 Cal.App.3d 791, 129 Cal.Rptr. 47 (1976).

## 3. Application of these Principles to the Current Policy Dispute

### a. Review of the Policy Language Itself

■ National Union's position that its policy is one of excess insurance stems primarily from Endorsement No. 1 of its policy. This endorsement states as follows:

> Self Insured Retention
>
> In consideration of the premium charged, it is hereby understood and agreed that Condition III "Deductible" is deleted in its entirety and replaced by the following:
>
> III. Self Insured Retention
>
> The self insured retention amount stated in the Declarations shall be subtracted from the total amount of damages and claims expenses resulting from each and every claim first made and reported to the company during the policy period and extending reporting period. *the [sic] limit of liability stated in the Declarations shall apply in excess of the self insured retention.* If the company so requests, then the Insured shall make direct payments within the self insured retention to appropriate other parties.
>
> Furthermore, wherever the term "deductible" is used in this policy, it shall be understood to mean "self-insured retention."
>
> All other terms and conditions remain the same.

Emphasis added.

Counsel for Lawyers' Mutual points out, however, that absent this endorsement the National Union policy in all respects appears to be one of primary coverage. The National Union policy does not identify itself as an excess policy. It is simply labelled "CALIFORNIA LAWYERS PROFESSIONAL LIABILITY POLICY." The Declarations page of the National Union policy does not make specific reference to any underlying primary policies over which the National Union policy

**2.** Counsel for Lawyers' Mutual cites *Cooper Laboratories, Inc. v. International Surplus Lines Ins. Co.,* 802 F.2d 667, 675–76 (3d Cir.1986) for the proposition that a duty to defend arises immediately and without limitation or condition precedent once it is determined that there is a potential for liability within coverage under a policy written as excess over a self-insured retention. This case can not be applied as broadly as submitted and accepting this interpretation would be directly contrary to California Law set forth in the above cited cases.

is written. In addition, the National Union policy specifically provides that it has both a right and a duty to defend its insured. Based upon these factors, Lawyers' Mutual argues that Endorsement No. 1 of the National Union policy is meaningless, and that the term "self-insured retention" should be read simply as "deductible."[3] This would render the National Union policy one of primary insurance with a $250,000 deductible.

The Court can not simply read-out an entire provision of the National Union policy. California principles of contract construction make it very clear that courts should give effect to all terms of an insurance policy where it is possible, reading the policy as a whole to determine the meaning of any disputed provisions. "Self-insured retention" does not appear to be a foreign concept in California insurance law. Not only is it discussed and applied in California case law as discussed above, but it is also described in *California Insurance Law and Practice,* § 14.02[1] & [4]. This treatise specifically discusses that where an insured has an excess policy over a self-insured retention,

> [T]he excess policy may be written in the form of a primary policy (e.g., including an express duty on the part of the insurer to provide the insured a defense once the amount of self-insurance has been exhausted) but is nonetheless an excess policy. Likewise, policies that are labeled primary are sometimes issued in excess of a self-insured retention, and may in fact be excess policies.

*Id.* at pp. 14–5 and 14–6. In addition, a deductible is distinguishable from a self-insured retention because unlike a deductible, "the excess insurer's obligations do not arise until after the amount of the self-insured retention has been paid." *Id.* at p. 14–8.

The National Union policy provided, in Endorsement No. 1, for a self-insured retention in the amount of $250,000. There is no ambiguity in the language or terms of this policy. Construing the language of Endorse-

ment No. 1 does not cause any problems of conflict with other portions of the policy. The "Other Insurance" clause of the National Union policy is a "pro-rata" clause, providing that National Union will not be responsible for a greater proportion of the loss and/or claim than its policy limits bear to the total limits of liability of all valid and collectible insurance. This policy language is not inconsistent with the self-insured retention. In the event the insured obtained other policies of excess insurance, the National Union policy would share in the total loss or liability with that insurer on a pro-rata basis. However, no obligation would arise to National Union for any loss or claim less than $250,-000.

Likewise, the duty to defend clause of the National Union policy is not inconsistent with it being an excess policy. If the $250,000 self-insured retention was exhausted, National Union would have a duty to defend its insured. While a primary policy of insurance generally includes a duty to defend, Lawyers' Mutual cites no authority for the proposition that the inclusion of a duty to defend in a policy makes that policy primary *despite* other policy language to the contrary.

From reading the National Union policy as a whole, it is clear that it is a policy of excess insurance with a $250,000 self-insured retention. National Union was not a primary insurer and thus had no obligation to participate in or contribute to the underlying action until the $250,000 was exhausted.

### b. *Extrinsic Evidence*

Because the language of the policy is clear, it is not necessary to review extrinsic evidence to determine its meaning. Therefore, the exhibits offered by National Union in support of its interpretation of the policy language are inadmissible. Even if the language of the policy was unclear, and extrinsic evidence was necessary to determine the meaning of the written instrument, the objections lodged by the Defendant with regard to

---

3. Lawyers' Mutual cites *Provost v. Unger,* 949 F.2d 161, 163–64 (5th Cir.1991) for the proposition that a self-insured retention of "special excess liability policy" is "just a deductible" such that the duty to defend begins immediately. The

Court does not find that case is authoritative on this point and that as submitted it is directly contrary to the California case authority on this point.

authenticity and on other substantive evidence grounds would be sustained and the documents would not be subject to consideration. Even if the Plaintiff could overcome the objections, the documents themselves do not deal with evidence concerning the parties intention in formation of the policy, but rather post-formation dealings between the insured and the carriers and would have dubious relevance.

### B. Is the National Union Policy Excess to the Lawyers' Mutual Policy?

Having determined that the National Union policy is excess and that the Lawyers' Mutual policy is primary, it is unnecessary to examine the "other insurance" clauses of the policies to determine if they would effect the relative duties and obligations of the parties. Because an excess or secondary policy, by its own terms, does not apply to cover a loss until the underlying primary insurance has been exhausted, an examination of other insurance clauses to determine the relative rights and responsibilities of the parties is unnecessary where, as here, the policies do not provide the same level of coverage. *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.*, 126 Cal.App.3d 593, 178 Cal. Rptr. 908 (1981); *CSE Ins. Group v. Northbrook Property & Casualty Co.*, 23 Cal. App.4th 1839, 29 Cal.Rptr.2d 120 (1994) (interpreting other insurance clauses of two umbrella policies). Therefore, the policy of insurance issued by National Union is excess over the primary policy issued by Lawyers' Mutual vis a vis the underlying claim in issue.

Any contrary conclusion would be inconsistent with the objectively reasonable expectations of the insured as drawn from the clear policy language. From the policy terms, Lawyers' Mutual contracted with its insured to provide a policy of primary insurance coverage up to $250,000, including a duty to defend the insured. National Union contracted with its insured to provide a policy of excess insurance over a $250,000 self-insured retention.

### Conclusion

In conclusion, the plain language of the National Union policy, read as a whole, shows that National Union provided a policy of excess insurance over a $250,000 self-insured retention. Because the Lawyers' Mutual policy is primary and the National Union policy is excess, there is no need to refer to the other insurance clauses of the respective policies in determining the relative rights and responsibilities of the companies. Lawyers' Mutual was obligated to defend its insured and contribute to a settlement of the claims against its insured to the extent of its insuring limits. National Union was neither obligated to contribute to the defense of its insured prior to exhaustion of the $250,000 self-insured retention nor responsible to Lawyers' National for any portion of the expenses within the $250,000 amount. Therefore, this Court rules as a matter of law that the National Union policy is excess over the $250,000 primary policy issued by Lawyers' Mutual.

IT IS SO ORDERED.