[No. B099756. Second Dist., Div. Two. July 31, 1996.]

GENERAL STAR INDEMNITY COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
HARD ROCK CAFE AMERICA, L.P., et al., Real Parties in Interest.

## COUNSEL

Quisenberry & Barbanel, Alan H. Barbanel, Stephen D. Treuer and Amy Dantzler for Petitioner.

No appearance for Respondent.

Christensen, White, Miller, Fink, Jacobs, Glaser & Shapiro, Louis R. Miller, Michael J. O'Connor and Gerard R. Kilroy for Real Parties in Interest.

## OPINION

**ZEBROWSKI, J.**—General Star Indemnity Company issued an insurance policy to Hard Rock.[1] Hard Rock was sued and tendered defense of the suit to General Star. General Star declined to defend. Hard Rock sued General Star for breach of contract, bad faith, etc. Hard Rock then moved for summary adjudication that General Star had breached its duty to defend, and for related adjudications. At the same time, General Star moved for summary judgment in its favor. The trial court granted Hard Rock's motion in part and denied General Star's motion. This petition for writ of mandate followed. The issue is controlled by the rather clear language of the policy, which was attached to Hard Rock's motion.

### THE POLICY

*1. The policy consisted, in part, of standard CGL forms.*

After an initial declarations page (stating policy limits of $1 million per occurrence) followed by a page with a service of suit clause, Hard Rock's policy contains nine pages of "CL 100" commercial general liability (CGL) forms providing the familiar coverage for "bodily injury" or "property damage" caused by an "occurrence." The CL 100 forms also contain the familiar language providing that General Star has the duty to defend a suit seeking such damages.

---

[1] Real parties in interest are Hard Rock Cafe America, L.P., Hard Rock Cafe America II, L.P., Hard Rock America, Inc., Hard Rock Cafe America (Los Angeles) L.P., Hard Rock Cafe (Los Angeles), and Peter A. Morton (collectively Hard Rock).

2. *The "Self-Insured Retention."*

Following the CL 100 forms is a "Schedule of Forms and Endorsements," listing "ENDORSEMENT NO. 3 - SELF-INSURED RETENTION - I" (the SIR endorsement). The SIR endorsement itself follows a few pages later. The first words at the top of the SIR endorsement are "THIS ENDORSEMENT CHANGES THE COMMERCIAL LIABILITY POLICY. PLEASE READ IT CAREFULLY." The SIR endorsement expressly states that the terms of the SIR endorsement control "[i]n the event of conflict with any provisions elsewhere in the policy." The SIR endorsement provides that the limits of liability stated in the policy declarations "shall apply in excess of your Self-Insured Retention, hereinafter called the Retained Limit." A space is then provided for the insertion of a "Retained Limit" amount. That space is filled in to state a Retained Limit of "ONE HUNDRED THOUSAND Dollars ($100,000.) Each occurrence." Hence the policy provided $1 million in excess coverage above a $100,000 SIR.

3. *The policy contains no "aggregate" SIR provision.*

Below the space for insertion of the Retained Limit amount, the SIR endorsement form contains a space for the inclusion of an aggregate Retained Limit amount. This space, however, is blank—the policy contains no aggregate Retained Limit. Hence amounts paid by Hard Rock to resolve cases pursuant to the $100,000 Retained Limit per occurrence do not aggregate. Instead, a $100,000 Retained Limit applies separately to each separate occurrence.

4. *The SIR endorsement eliminates the duty to defend and replaces it with a contingent duty to reimburse a pro rata portion of defense costs.*

The SIR endorsement provides that General Star "shall have the right *but not the duty* to assume charge of the defense and/or settlement of any claim or 'suit' brought against [Hard Rock]." (Italics added.) The SIR endorsement form also provides that the duty to defend (contained in the standard CL 100 forms) is "reinstated" only in the event that the "aggregate Retained Limit" is exhausted. Since the particular policy in issue here contains no aggregate Retained Limit, an aggregate Retained Limit cannot be exhausted and there is no possibility of "reinstatement" of a duty to defend.

The SIR endorsement also provides that "[s]hould the settlement amount for any claim or 'suit' exceed the Retained Limit, we [General Star] shall pay our proportion of claim handling and/or legal expenses . . . in the ratio which our proportion of the liability for the judgment rendered, or settlement

made, bears to the whole amount of said judgment or settlement." The SIR expressly states that "[s]hould any claim or 'suit' to which this policy applies be settled for a total amount not exceeding the Retained Limit, then no claim handling expenses or legal expenses shall be payable by [General Star]."

Thus the SIR endorsement, which expressly controls over the CL 100 forms, clearly contains these key provisions: (1) General Star has no duty to defend, (2) if settlement of a claim exceeds the Retained Limit of $100,000, General Star must reimburse Hard Rock for a pro rata portion of Hard Rock's defense costs, and (3) if settlement of a claim does not exceed the Retained Limit of $100,000, General Star pays nothing.

### THE RULING ON HARD ROCK'S MOTION FOR SUMMARY JUDGMENT

Hard Rock's motion for summary judgment or adjudication sought a ruling, among others, that General Star had breached its duty to defend. The motion was supported by a memorandum of eight pages. Nowhere in those pages is the SIR endorsement mentioned, even though the SIR endorsement is contained in the policy attached as an exhibit to the motion. General Star opposed on several grounds, among them that General Star had no duty to defend according to the plain wording of the SIR endorsement, nor any other duties until after exhaustion of Hard Rock's Retained Limit.

In reply, Hard Rock for the first time acknowledged the existence of the SIR endorsement. Now citing the provisions applicable only to an aggregate Retained Limit, which this particular policy did not have, Hard Rock argued that the SIR endorsement was only a deductible, this conclusion supposedly derived in some obscure manner from the fact that the SIR endorsement contained no aggregate limit. Hard Rock also argued that its Retained Limit had now been exhausted, but presented no specific evidence to that effect.[2] Hard Rock's briefing also argued that "[n]owhere does the [SIR] endorsement state that General Star's duty to provide a defense is in any manner affected by the self-insured retention." This was an obvious misstatement of the plain words of the SIR endorsement. As set forth above, the SIR endorsement plainly states that it "CHANGES" the policy, that General Star has the "right but not the duty" to defend, that General Star pays no claim handling or legal expenses if a case is settled below the SIR amount, etc.

The trial court, perhaps misled by Hard Rock's omissions and misstatements, granted summary adjudication that General Star "owed a duty to

---

[2]Regardless, any such evidence of exhaustion of Hard Rock's Retained Limit, being essential to any adjudication in favor of Hard Rock, belonged in Hard Rock's moving separate statement.

defend [Hard Rock] and therefore breached its insurance contract with [Hard Rock] by failing and refusing to provide a defense to [Hard Rock]." The trial court further ruled that the allegations in the underlying suit against Hard Rock were "potentially" covered and that the SIR endorsement "constituted a deductible and did not affect General Star's defense obligations."

### THE RULING ON APPEAL

The trial court's order must be reversed in its entirety, since a necessary predicate for all the trial court's rulings is the erroneous finding that General Star had a duty to defend. On the facts presented by Hard Rock, which include the provisions of the policy in issue, General Star had no duty to defend. Inasmuch as no duty to defend is involved, the trial court's finding that the claims in the underlying case were "potentially" covered is meaningless in this case. The trial court's ruling that "General Star is obligated to indemnify and reimburse [Hard Rock] for all defense costs and legal fees incurred by [Hard Rock] in defense of [the underlying action]" must likewise be reversed, since it is based on nothing more than the erroneous finding that General Star breached a duty to defend. Finally, it appears that the denial of General Star's motion for summary judgment may have been based on the erroneous conclusion that General Star had a duty to defend which it breached. On remand, General Star will be permitted to renew its motion for summary judgment so that its motion can be resolved on the merits in light of our decision that General Star had no duty to defend.

### DISCUSSION

1. *The policy must be enforced according to its plain terms.*

■ Although they have special features, the ordinary rules of contractual interpretation apply to insurance agreements. (*La Jolla Beach & Tennis Club, Inc.* v. *Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 37 [36 Cal.Rptr.2d 100, 884 P.2d 1048] (*La Jolla*).) The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties, and such intent is to be inferred, if possible, solely from the written provisions of the contract. (*La Jolla, supra*, 9 Cal.4th 27, 37.) "If contractual language is clear and explicit, it governs." (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545].)

An insurance policy provision is ambiguous only when it is capable of two or more constructions, both of which are reasonable. (*La Jolla, supra*, 9 Cal.4th 27, 37.) " 'Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists.' [Citation.]" (*Ibid.*) Language in an agreement "must be construed in the context of that instrument

as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." (*Bank of the West* v. *Superior Court, supra,* 2 Cal.4th 1254, 1265, italics omitted.) "If an asserted ambiguity is not eliminated by the language and context of the policy, courts then invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage. [Citations.]" (*La Jolla, supra,* 9 Cal.4th 27, 37-38.)

■ The terms of General Star's policy are plain. The SIR form provides a space for entry of the Retained Limit for each occurrence. This space was filled in with $100,000 for each occurrence. The form also contains a space for entry of an aggregate limit, if that is part of the contract. The form says "Aggregate, if applicable." This space was left blank. Hence, an aggregate limit was not part of the policy. The trial court apparently concluded in some manner, perhaps influenced by Hard Rock's misstatements and omissions, that since there was no aggregate limit, there was no SIR, but instead a duty to defend and indemnify with a deductible. Nothing in the policy or the record supports such a conclusion. (See *Nat. Union Fire Ins.* v. *Lawyers' Mut. Ins. Co.* (S.D.Cal. 1995) 885 F.Supp. 202, 206 [self-insured retention cannot be read out of policy; courts required to give effect to all terms].)

2. *The SIR endorsement effectively transformed the policy into an excess policy.*

The standard CL 100 forms, standing alone, provide the familiar primary "dollar one" coverage plus a duty to defend. However, the SIR endorsement, which by its express terms controls, effectively transforms the policy from a primary policy into an excess policy covering only amounts in excess of the $100,000 self-insured retention. (See, e.g., *Wiemann* v. *Industrial Underwriters Ins. Co.* (1986) 177 Cal.App.3d 38, 41 [222 Cal.Rptr. 705] [policy containing self-insured retention endorsement with Retained Limit provides excess insurance].)

*City of Oxnard* v. *Twin City Fire Ins. Co.* (1995) 37 Cal.App.4th 1072 [44 Cal.Rptr.2d 177] is on point. Oxnard had policies excess of SIR's by which Oxnard agreed to insure itself up to the level of the SIR. Oxnard argued that its insurer was liable for a portion of Oxnard's defense costs because of Oxnard's potential for liability in the underlying action. The court rejected that proposition, finding that the excess carrier had no duty to participate in Oxnard's defense because the "primary coverage" (Oxnard's SIR) was not exhausted.

Here the SIR endorsement plainly provides an SIR of $100,000 and plainly states that General Star has "the right but not the duty to assume charge of the defense." General Star here was in the position of an excess carrier having no obligations until the SIR was exhausted. Hard Rock's motion, which failed even to mention the existence of the SIR, certainly did not demonstrate that the SIR was exhausted. Once the SIR is exhausted, the duties General Star then has are defined in the SIR endorsement.

3. *The lack of an aggregate Retained Limit does not render the SIR endorsement inoperative.*

 Hard Rock argued, and the trial court apparently accepted, that because the SIR endorsement did not contain an aggregation feature, it was inoperative. This argument misconstrues the purpose and effect of an aggregation feature.

 An aggregation feature is for the benefit of the insured. Without an aggregation feature, the SIR amount applies anew to each claim. The insured must exhaust that amount separately, over and over again as many times as there are claims. Before the insurer has any obligation on any single claim, the SIR must be exhausted for that claim. If, by contrast, there is an aggregation provision, payments made by the insured may be aggregated until the aggregate limit is exhausted. Thereafter, the insurance will cover any additional claims from dollar one. Additionally—in the SIR endorsement form here under consideration—when an aggregate limit is exhausted, all provisions of the SIR endorsement become "void" and "all terms and conditions of the policy are reinstated to their full force and effect." Thus the typical duty to defend would be "reinstated" if the policy contained an aggregation feature which was exhausted.

An aggregation feature obviously provides added protection to an insured, and can therefore be expected to cost an additional premium amount. An aggregation feature is not essential to a self-insured retention, which can be fully operable without an aggregation feature. Hard Rock here presented no evidence that it ever contracted and paid for an aggregation feature. Paradoxically, Hard Rock here successfully argued that it had *more* coverage, not *less*, by reason of the absence of an aggregation feature. Standing alone, this is a signpost that the policy was misconstrued by the trial court.

The "SELF-INSURED RETENTION ENDORSEMENT I" is a form, containing blanks for the insertion of various items of information such as date, policy number, name of insured, number of endorsement, retained limit per occurrence, aggregate Retained Limit "If applicable," and name of claims service

company. When an aggregate Retained Limit blank is left blank, that means that there is no aggregate retained limit, not that the other terms of the SIR endorsement do not apply. Nor can leaving the aggregate retained limit space empty be interpreted to mean that the aggregate retained limit is "zero." An "aggregate" retained limit of "zero" would not be consistent with a "per occurrence" retained limit of $100,000 (or any other amount). Hard Rock has not even argued that the aggregate retained limit must be treated as zero, although that is the only way to obtain the conclusion that the aggregate retained limit was exhausted in this case and that the duty to defend was thus "reinstated." ■ The terms of a policy must be construed consistently, with each part helping explain the others. (*La Jolla*, *supra*, 9 Cal.4th 27, 37.)

■ The argument that the SIR should be treated simply as a deductible has never been intelligibly explained. If the SIR endorsement were inoperative, none of its provisions would apply. Hard Rock has not explained its rationale for picking and choosing which provisions of the SIR endorsement will apply and which will not.

## DISPOSITION

Let a writ issue directing the superior court to vacate its orders of January 29, 1996, and February 8, 1996, and issue a new and different order denying Hard Rock's motion for summary judgment or summary adjudication in its entirety. In addition, General Star shall be permitted to renew its motion for summary judgment or adjudication, which shall be ruled upon on the merits. The petition is denied in all other respects. The temporary stay is vacated. Costs are to be borne by real parties in interest.

Boren, P. J., and Fukuto, J., concurred.