**GENERAL STAR NATIONAL INS. CORP., a corporation, Plaintiff,**

v.

**WORLD OIL COMPANY, a corporation, Defendant.**

**No. CV 96–4497 DDP (Ex).**

United States District Court.
C.D. California.

July 25, 1997.

Michael L. Boli, Moeller Boli Caspari & Walsh, Alameda, CA, for General Star Nat. Ins.Co.

Michael G. Romey, Assaf Joshua Henig, Latham & Watkins, Los Angeles, CA, for World Oil Corp.

PREGERSON, District Judge.

### Order Granting Summary Judgment In Favor Of Defendant World Oil Corporation

Defendant's motion for summary judgment and Plaintiff's cross-motion for summary judgment came before the Court on June 16, 1997. After reviewing and considering the materials submitted by the parties and hearing oral argument, the Court grants summary judgment in favor of Defendant.

## I. Background

Plaintiff General Star National Insurance Company ("General Star") insured the business automobiles, including certain private passenger automobiles, of defendant World Oil Corporation ("World Oil") from the Spring of 1993 to the Spring of 1994. Genesis Underwriting Management Company ("Genesis") provided underwriting and claims management services for policies written by General Star, including the policy written for World Oil.

In the Winter and Spring of 1994, World Oil and General Star negotiated the renewal of the policy. Kathy Housel of Willis Corroon, World Oil's broker, negotiated on behalf of World Oil. Peter Gorin of Sherwood Insurance, General Star's broker, negotiated on behalf of General Star. Genesis employees dealt only with Gorin, not with Housel or any other person representing World Oil.

World Oil and General Star agreed to renew the General Star policy for one year effective April 1, 1994. The policy had a "per accident" limit of $1,200,000 ("limit of insurance"). The policy had a "per accident" deductible of $100,000 and an "annual aggregate" deductible of $150,000 (collectively "deductible"). The policy provided that the limit of insurance would not apply until the amount of a given loss was reduced by the amount of the deductible.

World Oil and General Star also entered into a "Claims Service Agreement" ("Claims Agreement") to clarify the parties' obligations under the policy. The Claims Agreement applied to the original policy and to the renewed policy. The Claims Agreement provided that World Oil would defend all claims that fell within the $100,000 "per accident" deductible. General Star retained the right, but not the duty, to "associate in the handling" or "take complete control at any time of the handling" of such claims. (Claims Agreement § 1.)

The Claims Agreement also required World Oil to provide a "clean, irrevocable and unconditional letter of credit" that General Star could draw down to satisfy payment of the deductible in the event that World Oil refused or was unable to pay all or part of the deductible. The letter of credit was $700,000 for the original policy and $800,000 for the renewed policy. (*Id.* at § 2.)

During the time that World Oil and General Star were negotiating the renewal of the original policy, World Oil also sought to purchase coverage for the deductible through Willis Corroon. (Housel Depo. at 79:5–9.) World Oil asserts that it wanted to purchase deductible coverage because certain of its employees were concerned that they might be putting World Oil at risk when they drove their World Oil cars because of the deductible provision. (Housel Depo. at 79:10 to 80:24.) Gorin, General Star's broker, was involved in World Oil's efforts to obtain coverage for the deductible. (Gorin Depo. at 52:12–17, 64:19–22, 66:5–11, 94:19–95:1; Housel Depo. at 89:1.6–24, 100:8–21.)

World Oil ultimately purchased a second policy from Hartford Fire Insurance Company ("Hartford"), which was effective from April 27, 1994 to April 1, 1995 ("Hartford policy"). The limit of coverage under the Hartford policy was $250,000, an amount equal to the maximum deductible that could result from a single accident under the General Star policy. The Hartford policy had no deductible.

On or about June 23, 1994, one of World Oil's cars was involved in an accident. A person injured in that accident brought an action in state court against World Oil and others. World Oil tendered its defense to General Star and Hartford, both of which accepted the tender of defense. The plaintiff ultimately settled with World Oil for $775,000 ("Ruspoli settlement"). Hartford paid its full policy limit of $250,000 and General Star contributed the remaining $525,000. General Star then filed this action seeking reimbursement of $133,688, which is the difference between what General Star paid ($525,000) and what General Star would have paid ($391,312) if World Oil had paid the $250,000 deductible.

World Oil filed a motion for summary judgment seeking a determination that the Hartford contribution fulfilled World Oil's deductible obligation under the General Star policy. General Star filed a cross-motion seeking a determination that under the terms

of the General Star policy, World Oil could not purchase insurance coverage for the deductible, and thus World Oil should have contributed $250,000 of its own money to the Ruspoli settlement.

The Court finds that the General Star policy did not prohibit World Oil from obtaining insurance coverage for the deductible. In addition, the Court finds that the "other insurance" clause in the General Star policy did not require a pro rata sharing of the Ruspoli settlement.

## II. Discussion

### A. Standard On Summary Judgment.

Summary judgment is appropriate when there "is no genuine issue of material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In order to defeat a motion for summary judgment, there must be facts in dispute that are both genuine and material, i.e., there must be facts upon which a fact finder could "reasonably find" for the non-moving party. See Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The court does not weigh the evidence or make credibility determinations; rather, the court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. Id.

The initial burden of establishing that there is no genuine issue of material fact lies with the moving party. Fed.R.Civ.P. 56(c); Celotex, 477 U.S. at 323, 106 S.Ct. at 2552–53; British Airways Board v. Boeing Co., 585 F.2d 946, 951 (9th Cir.1978), cert. denied, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Once the movant has met this burden by producing evidence that, if left uncontroverted, would entitle the moving party to a directed verdict at trial, the burden shifts to the non-movant to present specific facts showing that there is a genuine issue of material fact. See Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324, 106 S.Ct. at 2553; Lake Nacimiento Ranch Co. v. San Luis Obispo, 841 F.2d 872, 876 (9th Cir.1987), cert. denied, 488 U.S. 827, 109 S.Ct. 79, 102 L.Ed.2d 55 (1988).

### B. The General Star Policy Did Not Prohibit World Oil From Acquiring Insurance to Cover the Amount of the "Deductible".

■ General Star asserts that its underwriting and marketing "philosophy" was to accept liability risks only when the insured shared the risk of loss by means of a substantial deductible or a self-insured retention. General Star asserts that its policy makes the insured its "partner" and motivates the insured to "take seriously" General Star's loss control and safety programs. General Star asserts that it would not have renewed World Oil's policy if it had known that World Oil was seeking to eliminate its "personal" responsibility for the deductible. (Aspell Decl. at ¶ 10; Hanuschak Decl. at ¶ 13.)

General Star further asserts that World Oil and General Star both intended that World Oil share the risk of loss with General Star and that World Oil understood that a "deductible buy-back" policy (a policy covering the General Star deductible) would violate General Star's risk-sharing principle. However, General Star has not presented evidence sufficient to raise a genuine issue of material fact regarding whether World Oil intended to share the risk of loss with General Star or whether World Oil understood that it could not seek coverage for the amount of the General Star deductible under the terms of the General Star policy.

General Star asserts that World Oil understood that it could not purchase deductible insurance because World Oil did not ask General Star's permission before obtaining the Hartford policy, World Oil did not notify General Star that it had purchased the Hartford policy, and World Oil "still did not report to [General Star] about the existence of the Hartford policy" even after it had reported its loss to General Star. (Plaintiff's Motion at 12 (emphasis in original).) From these failures, General Star concludes that "World [Oil] knew: (1) that [General Star] required that its insureds share the risk by means of the deductibles or a retention; (2) that the 'deductible buy back' policy was contrary to

[General Star's] risk sharing approach to insurance; and (3) that if World Oil reported the Hartford policy to [General Star], the [General Star] underwriter would insist that the [General Star] policy be endorsed to exclude coverage for the private passenger autos." (*Id.*) However, World Oil's conduct is equally consistent with the actions of an insured who acted without knowledge that its actions were impermissible. Nothing in the General Star policy expressly prohibits World Oil from acquiring insurance to cover the cost of the deductible.

General Star offered the declaration of Hanuschak, an Assistant Vice President of Genesis, who declared that during the renewal negotiations for the General Star policy, Gorin, the broker from Sherwood, told him that World Oil was interested in a possible "deductible buy back" primary auto policy for World Oil's private passenger autos to which the original policy would apply as excess coverage. (Hanuschak Decl. at ¶ 12.) Hanuschak allegedly told Gorin that Genesis would not accept such an "excess of primary" risk because of Genesis' policy of requiring the insured to participate in the insured risk. However, there is no evidence that Gorin ever told World Oil that coverage for the deductible was antithetical to Genesis' and General Star's risk-sharing philosophy and prohibited by the policy.

There is evidence that Gorin told Housel that World Oil could not purchase a deductible buy-back policy from General Star. (Gorin Depo. at 95.) However, after this conversation, Gorin continued to discuss with Housel his attempts to find coverage for the deductible with other insurance companies.[1] (Housel Depo. at 210–13.)

General Star also asserts that the policy language requires World Oil to pay the deductible itself. The language to which General Star points is: (1) the Claims Agreement, which states that "World understands

and agrees that it is obligated to assume and pay a $100,000 deductible ..." (Claims Agreement at § 1(A) (emphasis added)), and (2) the General Star policy, which states that if General Star pays all or any portion of the deductible, "you must reimburse us for the deductible or the part of the deductible we paid" (General Star policy, "Deductible Liability Coverage" § D (emphasis added)). This coverage, however, only requires World Oil to bear the first $100,000 of loss ($250,000 if the aggregate deductible has not been met); it does not unambiguously require World Oil to pay the deductible itself. Even if General Star intended the policy language to prohibit World Oil from obtaining insurance coverage for the amount of the deductible, the language is ambiguous and must be construed against the insurer, General Star, and in favor of the insured, World Oil.

General Star also asserts that the existence of the "other insurance" clause is evidence that the General Star policy prohibited World Oil from obtaining coverage for the deductible. However, while the effect of the "other insurance" clause is discussed in the next section of this Order, the language of the "other insurance" clause does not unambiguously prohibit World Oil from obtaining deductible coverage.

Finally, General Star asserts that the requirement under the Claims Agreement that World Oil post an irrevocable letter of credit of $700,000 (increased to $800,000 under the renewed policy), which was intended to secure World Oil's obligation to pay the deductible, establishes that the parties intended that World Oil alone bear the cost of the deductible. General Star asserts that the letter of credit would not have been necessary if World Oil could obtain additional insurance. However, at the time World Oil agreed to the letter of credit, it was not insured for the amount of the deductible. Moreover, the letter of credit would protect

---

1. General Star argues that Gorin did not attempt to place coverage for the deductible after his discussion with Housel. However, General Star supports its position with an April 22, 1996 letter from Gorin to Loreto Ruzzo, the Vice President and Assistant General Counsel of Willis Corroon. In the letter, Gorin asserts that he told Housel that World Oil could not purchase coverage for

the deductible under the General Star policy, and that after he informed Housel of this fact, the two never discussed the matter again. However, this letter is hearsay, and therefore cannot support General Star's position. At his deposition, Gorin stated that he could not remember whether he continued to place coverage for the deductible after his discussion with Housel.

General Star in the event that Hartford became insolvent and unable to meet its obligations to World Oil.

The Court finds that there is not a genuine issue of material fact regarding whether the General Star policy prohibited World Oil from obtaining insurance for the amount of the deductible. The General Star policy nowhere states that the insured cannot purchase coverage for the amount of the deductible. If General Star intended the language and the requirements to which it points to prohibit the insured from obtaining separate coverage for the deductible, General Star failed to state this intention in unambiguous terms.

### C. The "Other Insurance" Clauses Do Not Require Proration of the Ruspoli Settlement.

#### 1. "Other insurance" clauses.

Both the Hartford and the General Star insurance policies are self-described "primary" policies. Both policies also contain identical language stating that "[w]hen this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share." "Our share" is defined as "the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all Coverage Forms and policies covering on the same basis." (General Star policy § IV(B)(5); Hartford policy § IV(B)(5).)

■ "Other insurance" clauses are a common means by which insurers attempt to limit their liability in situations where two or more insurance policies cover the same loss on the same basis.[2] See Cargill, Inc. v. Commercial Union Ins. Co., 889 F.2d 174, 180–81 (8th Cir.1989). "Other insurance" clauses prevent double recovery by the insured, see Aerojet–General Corp. v. Trans-

port Indem. Co., 45 Cal.App.4th 1192, 1221, 53 Cal.Rptr.2d 398 (1996), and attempt to control the manner in which the insurer contributes to a loss, see Fire Ins. Exch. v. American States Ins. Co., 39 Cal.App.4th 653, 659, 46 Cal.Rptr.2d 135 (1995).

■ In general, courts enforce "other insurance" clauses according to their terms as long as enforcement does not eliminate coverage for the insured.[3] If enforcement would eliminate coverage, courts interpret the clauses in a manner that ensures coverage. See Olympic Ins. Co. v. Employers Surplus Lines Ins. Co., 126 Cal.App.3d 593, 599, 178 Cal.Rptr. 908 (1981).

In this case, both "other insurance" clauses are valid. If the "other insurance" clauses apply, then General Star and Hartford should share coverage for the Ruspoli settlement pursuant to the terms of the "other insurance" clauses.

#### 2. Deductible versus self-insured retention.

Most liability insurance polices contain a "deductible" or a "self-insured retention" ("SIR") that requires the insured to bear a portion of a loss otherwise covered by the policy. See H. Walter Croskey et al., California Practice Guide: Insurance Litigation at 7:378 (1996).

■ A "deductible" is a portion of an insured loss for which the insured is responsible. The deductible is generally a specific sum that the insured must pay before the insurer owes its duty to indemnify the insured for a loss. Id. at 7:379. A deductible usually relates only to the damages sustained by the insured, not to defense costs. That is, the insurer is fully responsible for defense costs as long as the loss is potentially covered under the policy. Id.

■ A SIR is generally a specific amount of loss that is not covered by the policy but

---

**2.** "On the same basis" simply means that the "other insurance" clause applies to policies that provide the same type of protection (e.g., two or more primary policies, two or more excess policies). Thus, "other insurance" clauses do not come into play where one of two policies is a primary policy and the other policy is an excess policy.

**3.** "Other insurance" clauses could, if applied as written, work in tandem to eliminate coverage for the insured. For example, if both applicable policies contain "other insurance" clauses purporting to eliminate coverage where more than one insurer covers the same accident or where both policies have "other insurance" clauses purporting to transform the policies into excess policies, the clauses would eliminate coverage if applied as written.

instead must be borne by the insured. *Id.* at 7:384. A SIR endorsement may provide that the insurer shall have the right, but not the duty, to assume charge of the defense and settlement of any claim, including those below the level of the SIR. *See General Star Indem. Co. v. Superior Court,* 47 Cal.App.4th 1586, 1590–91, 55 Cal.Rptr.2d 322 (1996) (hereinafter *"Hard Rock Cafe"*).

3. *Effect of a SIR on an insurance policy and on "other insurance" clauses.*

■ A SIR endorsement effectively transforms what is labeled a primary policy into an excess policy covering only amounts in excess of the amount of the SIR. See *Hard Rock Cafe,* 47 Cal.App.4th at 1593–94, 55 Cal.Rptr.2d 322; *Wiemann v. Industrial Underwriters Ins. Co.,* 177 Cal.App.3d 38, 41, 222 Cal.Rptr. 705 (1986).

When a policy is excess to another policy, there is no need to analyze the "other insurance" clauses in either of the policies. *See National Union Fire Ins. Co. v. Lawyers' Mutual Ins. Co.,* 885 F.Supp. 202, 207 (S.D.Cal.1995). "Because an excess or secondary policy, by its own terms, does not apply to cover a loss until the underlying primary insurance has been exhausted, an examination of other insurance clauses to determine the relative rights and responsibilities of the parties is unnecessary where ... the policies do not provide the same level of protection." *Id.*

4. *The $100,000 "per accident" deductible is effectively a SIR, and thus World Oil did not have other insurance for the first $100,000 of loss resulting from the Ruspoli settlement.*

■ Under California law, an "other insurance" clause does not apply until the

amount of the loss rises to the level of the SIR. Thus, General Star's and Hartford's "other insurance" clauses do not apply if the General Star "per accident" deductible is properly characterized as a SIR. The Court finds that the General Star deductible, although labeled a deductible, is equivalent to a SIR, and thus the "other insurance" clauses do not apply to the first $100,000 of loss.

There is no dispositive case law differentiating deductibles from SIRs. However, one of the key characteristics of a SIR is that the insurer has no obligation to indemnify or defend a loss until the insured has paid the amount of the SIR. For purposes of analyzing the effect of "other insurance" clauses, the Court finds that this characteristic is the most significant characteristic of a SIR because it is this characteristic that transforms what would otherwise be a primary policy into an "excess" policy.

Here, the Claims Agreement requires World Oil to defend and adjust claims within the "per accident" deductible of the General Star policy.[4] (Claims Agreement at § 1(C) ("[General Star] will share in the expenses incurred by World ... only if there is an ultimate loss payment and then only in the ratio that [General Star's] loss payment (i.e., loss amount in excess of the $100,000 deductible) bears to the entire ultimate loss payment....")) General Star had the right, but not the duty, to associate in or to take complete control of any claim against World Oil. Accordingly, the Court finds that the General Star policy was excess to the amount of the "per accident" deductible.[5]

Because the Claims Agreement transformed the "per accident" deductible into a SIR, thereby transforming the General Star

---

**4.** General Star asserts that World Oil does not truly have a duty to defend because the Claims Agreement obligates General Star to reimburse World Oil for defense costs. However, the Claims agreement only provides for reimbursement in proportion to General Star's share of the ultimate net loss. This arrangement is the same as that found in *Hard Rock Cafe,* where the SIR provided that "[s]hould the settlement amount for any claim or 'suit' exceed the Retained Limit, we [(the Insurer)] shall pay our proportion of claim handling and/or legal expenses ... in the

ratio which our proportion of the liability for the judgment rendered, or settlement made, bears to the whole amount of said judgment or settlement." *Hard Rock Cafe,* 47 Cal.App.4th at 1591, 55 Cal.Rptr.2d 322.

**5.** The Court's analysis is consistent with the definitions of primary and excess policies. *Olympic Insurance* contains the following frequently quoted description of the difference between primary and excess policies:

policy into an excess policy up to the amount of the "per accident" deductible, the Court finds that the "other insurance" clause does not apply to that amount of loss.

> 5. *The "other insurance" clause does not apply to the amount of the "annual aggregate" deductible.*

██ Still unresolved is the effect of the "other insurance" clause on the loss falling above the amount of the "per accident" deductible but below the amount of the "annual aggregate" deductible. There are no reported California state court decisions on point. *See, e.g., Stonewall Ins. Co. v. City of Palos Verdes Estates,* 46 Cal.App.4th 1810, 1858–59, 54 Cal.Rptr.2d 176 (1996) (declining to determine the interplay between "other insurance" clauses and payment of deductibles). The Court holds that on the facts presented in this case, the "other insurance" clause does not apply where the amount of the loss is above $100,000 but below $250,000.

Although both the General Star and the Hartford policies have "other insurance" clauses, and although the General Star policy has a deductible and the Hartford policy's "other insurance" clause will be implicated in situations where the other insurer has a deductible, neither policy contains any language informing the insured how the deductible and the "other insurance" clauses interact.

There are at least two ways to interpret the "other insurance" clause and its relationship to the deductible. One interpretation is that until World Oil has met the deductible amount, there is no "other insurance" for purposes of the "other insurance" clause. The other interpretation is that there is "other insurance" even when one or more of the other potentially applicable insurance agreements has a deductible. The second interpretation in turn sparks a new question, also

with two alternatives: when is the deductible taken into account—after proration or before proration?

Assuming for the moment that the "other insurance" clauses apply within the deductible amount, it is important to observe the effects of such an interpretation. First, if the Court accounts for the deductible before proration, Hartford, which issued a policy with no deductible, will be able to take advantage of General Star's deductible provision. This result is unfair to World Oil, which bargained for (and paid for) a policy with no deductible. This result is also unfair to General Star, which bargained for (and was paid for) a deductible that was intended to benefit only General Star—applying the deductible before proration would require General Star to share the benefit of the deductible with Hartford.

Second, if the Court prorates before the deductible is taken into account, the result is as follows: [6] (1) General Star would bear 88.89% of the loss ($1.2m/$1.35m) and Hartford would bear 11.11% of the loss ($.15m/$1.35m); (2) General Star's pro rata portion of the loss would be $450,007.50 ($600,007.50—$150,000 deductible); (3) Hartford's pro rata share of the loss would be $74,992.50. Under these facts, World Oil would be left to bear a shortfall of $150,000 ($675,000—$450,007.50—$74,992.50). *See Pacific Power & Light Co. v. Transport Indemnity,* 460 F.2d 959, 962–63 (9th Cir.1972) (applying Oregon law). Alternatively, the Court could find that the shortfall should be shifted to Hartford, but because the Hartford policy would only have $75,007.50 in remaining liability coverage ($150,000—$74,992.50), World Oil is still left with a shortfall of $74,992.50 ($150,000—$75,007.50). *See Insurance Co. of N.A. v. Continental Casualty Co.,* 431 F.Supp. 316, 319 (E.D.Pa.1977) (reducing pro

---

Primary coverage is insurance coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability.... "Excess" or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted. *Olympic Insurance,* 126 Cal.App.3d at 597–98, 178 Cal.Rptr. 908 (citations omitted) *see also*

*National Union,* 885 F.Supp. at 206 (quoting *Olympic Insurance).*

**6.** This analysis takes into account the $100,000 that is covered by Hartford alone. Thus, the remaining limit of liability on the Hartford policy is $150,000. The limit of liability for the General Star policy is still at $1,200,000 and the deductible is $150,000. The loss remaining is $675,000.

rata obligation of insurer with deductible provision but increasing obligation of insurer without a deductible provision), *rev'd on other grounds,* 575 F.2d 1070 (3d Cir.1978). However, Hartford's "other insurance" clause does not provide for shifting additional liability after proration where the limit of insurance has not been reached, although such a shift would not be inequitable.

In short, there is no single unambiguous interpretation of the General Star and Hartford insurance policies. Any of several interpretations is reasonable; no interpretation is completely satisfactory. Under California law, courts generally resolve ambiguities in favor of coverage for the insured. *See, e.g., Montrose Chemical Corp. of Cal. v. Admiral Ins. Co.,* 10 Cal.4th 645, 667, 42 Cal.Rptr.2d 324, 913 P.2d 878 (1995); *AIU Ins. Co. v. Superior Court,* 51 Cal.3d 807, 822, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990). Therefore, the Court must interpret the General Star policy to find that for purposes of the "other insurance" clauses, World Oil does not have "other insurance." *See Cargill, Inc. v. Commercial Union Ins. Co.,* 889 F.2d 174, 180–81 (8th Cir.1989) (holding that up to the amount of the deductible there was no "other insurance"). This interpretation provides World Oil with the coverage it reasonably believed it had, and yet the interpretation is not unfair to General Star, which is no worse off than it would have been if World Oil had not purchased the Hartford policy.

### III. Conclusion

Based on the foregoing, the Court grants summary judgment in favor of World Oil.

IT IS SO ORDERED.