347 So.2d 384 (1977)
CRITERION INSURANCE COMPANY
v.
Harold ANDERSON, who sues as Administrator of the Estate of Gina Baker, Deceased.
SC 2186.
Supreme Court of Alabama.
June 3, 1977.
Richard A. Ball, Montgomery, for appellant.
Richard H. Gill, Montgomery, for appellee.
BLOODWORTH, Justice.
Insurer Criterion Insurance Company appeals from a summary judgment for plaintiff, Administractor of the Estate of Gina Baker, deceased, the insured. We reverse and remand.
The undisputed facts are stated in the following paragraphs from the trial court's judgment:
"On May 25, 1974 Gina Elizabeth Baker, age 2, was a passenger in her parents' car. In a collision with a car driven by Ben E. Thornton, Gina Baker was killed and her mother and father were seriously injured. It is agreed that the collision was the fault of Thornton. Both Mr. and Mrs. Baker sued Thornton and recovered judgments of $13,000 and $10,000 respectively. Thornton had a policy of liability insurance with the Home Indemnity Co. in the limits of $10,000/$20,000, which was exhausted in satisfaction of the two judgments. Defendant concedes that these judgments were in no way excessive in view of the serious injuries to the two plaintiffs.
"Thereafter, plaintiff, the administrator of the estate of Gina Baker, filed suit against Thornton and obtained a judgment *385 of $10,000. Payment of that judgment was refused by the Home on the ground that there was no coverage remaining to pay the estate of Gina Baker. It is stipulated that there has been no recovery from any source by Gina Baker's estate other than funeral expenses from defendant Criterion under its medical payments coverage.
"Suit was brought against Criterion which had issued a policy of uninsured motorist insurance to Gina's father Richard Baker, under which Gina was an insured."
On cross motions for summary judgment, the trial court held that Thornton was an uninsured motorist with respect to the claim by the estate of Gina Baker and awarded the estate $10,000 plus interest from the date of the filing of the claim. The trial court indicated that it is ". . . a policy of the Alabama law to provide a recovery by an injured party of at least up to the $10,000 minimum assuming damages in that amount."
Criterion appeals contending that Thornton was not an uninsured motorist because he had coverage with the limits prescribed by Tit. 36, § 74(46)(c), Code of Alabama 1940 (Recompiled 1958), as amended, which has been incorporated into the Uninsured Motorist Act, Tit. 36, § 74(62a). It argues that the provisions of § 74(46)(c) for $20,000 per-accident minimum coverage and for $10,000 per-person minimum coverage is controlling.
This is a case of first impression in Alabama and involves the meaning of the term "uninsured motor vehicles" in Tit. 36, § 74(62a), supra, which states:
"No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in subsection (c) of section 74(46) of this title, under provisions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom . . . ." [Italics supplied.]
Tit. 36, § 74(46)(c), supra, is that portion of the Motor Vehicle Safety-Responsibility Act which excepts from the security requirements of § 74(46)(a) the operator or owner of a vehicle involved in an accident
". . . if such owner had in effect at the time of such accident an automobile liability policy with respect to the motor vehicle involved in such accident; * * * provided, however, every such policy or bond is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than $10,000 because of bodily injury to or death to one person in any one accident and, subject to said limit for one person, to a limit of not less than $20,000 because of bodily injury to or death of two or more persons in any one accident, and, if the accident has resulted in injury to or destruction of property, to a limit of not less than $5,000 because of injury to or destruction of property of others in any one accident."
In sum, Section 74(62a) merely requires that insurers provide uninsured motorist coverage in the same minimum limits required under the provisions of § 74(46)(c) for liability policies.
The issue is whether Thornton's automobile was an "uninsured motor vehicle" as to the Insured even though it was covered by liability insurance in the minimum limits prescribed by Tit. 36, § 74(46)(c), supra. We hold that it was not an "uninsured motor vehicle."
The Insured's policy defined "uninsured automobile" as follows:
"(1) an automobile with respect to the ownership, maintenance or use of *386 which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same is or becomes insolvent; or
"(2) a hit-and-run automobile as defined; but the term `uninsured automobile' shall not include:
(i) an insured automobile . . . ." [Italics supplied.]
Our holding in this case gives effect to this definition insofar as it pertains to the facts of this case, since it is not inconsistent with the uninsured motorist provisions of our Motor Vehicle Safety-Responsibility Act.
Moreover, our holding is consistent with our prior decisions.
In Higgins v. Nationwide Mutual Insurance Co., 291 Ala. 462, 466-67, 282 So.2d 301, 305 (1973), this Court wrote that:
"It is reasonable and safe to state that `an "uninsured automobile" is ordinarily defined to include motor vehicles with respect to which neither the owner nor the operator carries bodily injury liability insurance, and "hit and run" automobiles.' . . ."
Additional instances in which other courts have found vehicles to be "uninsured" were noted in Wilbourn v. Allstate Insurance Co., 293 Ala. 466, 468, 305 So.2d 372, 373 (1974):
"It is well-settled and common knowledge that a motorist or a vehicle carrying no liability insurance is `uninsured.' Courts have also found motorists were `uninsured,' in other situations: (1) policy limits are below the statutory minimum, (2) the policy fails to cover the injury involved, (3) the insurer becomes insolvent after the policy is issued so there is no insurance applicable to, or at the time of, the accident, (4) the owner or operator of the vehicle causing the accident is unknown, commonly classified as a `hit-andrun' case. . . ." [Italics supplied.]
In Wilbourn, this Court held that a motor vehicle was not "uninsured" as to an injured party whose injuries exceeded $10,000 where it was covered by a liability policy with the minimum limits and $10,000 was paid to the injured party. The Court stated that the vehicle was "underinsured," but not "uninsured."
The Insured contends, however, that this Court should extend the definition of uninsured motor vehicles to cover situations in which the tortfeasor's liability coverage is exhausted before each insured recovers at least $10,000, assuming, of course, damages in that amount or more. The Insured proposes that, subject to the limits of the uninsured motorist coverage available, the uninsured motorist coverage should be used to provide each injured party a recovery of damages up to at least $10,000. The assumption underlying the Insured's argument, and the trial court's holding, is that the policy of the Alabama uninsured motorist statute is to assure to each injured party the availability of a minimum of $10,000 coverage.
We think that assumption to be incorrect. The statute mandates a minimum of $10,000 coverage only in the case of accidents resulting in bodily injury to or the death of one person. Where an accident results in bodily injury to or the death of two or more persons, the statute mandates a minimum coverage of $20,000 for the accident. The statute clearly contemplates situations in which the recovery of each individual might be less than $10,000. It appears, therefore, that the policy behind the statute is to assure the availability of minimum coverage for each accident, not for each injured person. The minimum which the legislature intended to make available was available in the present case under Thornton's liability policy. For this reason we cannot hold that he was an "uninsured motorist."
*387 The Insured cites Porter v. Empire Fire and Marine Insurance Co., 12 Ariz.App. 2, 467 P.2d 77 (1970), in support of the trial court's judgment. That case presented basically the same issue as that presented here, but allowed the insured to recover under his uninsured motorist insurance because he had recovered less than $10,000 under the tortfeasor's liability coverage, which was in compliance with Arizona's Financial Responsibility Act, but which was exhausted by payments to others injured in the same accident.
The Arizona court stated that it relied heavily on the general policy of Arizona courts to effectuate a strong legislative policy favoring uninsured motorist coverage. This Court has followed a similar policy, but such policy does not give this Court a license to extend uninsured motorist coverage beyond the requirements of the uninsured motorist statute. The Arizona court held that the purpose of the uninsured motorist statute was to provide a minimum coverage of $10,000 per person. But that argument, as we have already pointed out, fails to take into account the statutory provisions for a per-accident minimum amount of $20,000.
Porter appears to differ from the present case in one important respect: but for the court's decision, the insured there would have fared better had he been injured by an uninsured motorist, rather than by one with minimal liability coverage. Here, the Insured would have been in the same position in either event.
As even the Arizona court said, the legislative purpose behind the uninsured motorist statute was to put the insured in the same position he would have been in if the tortfeasor had been a liability insurance policyholder.
Our own Court of Civil Appeals held in Higgins v. Nationwide Mutual Insurance Co., 50 Ala.App. 691, 695, 282 So.2d 295, 300 (1973), aff'd Higgins, supra:
". . . it appears to us from the plain and unambiguous wording of the statute, that it is the basic purpose of the Uninsured Motorist Act, and thus the public policy of the State as to this matter, that Alabama citizens purchasing automobile liability insurance be able to obtain for an additional premium the same protection against injury or death at the hands of an uninsured motorist as they would have had if that motorist had obtained for himself the minimum liability coverage required by the Safety Responsibility Act. . . ." [Italics supplied.]
Porter, supra, has been expressly rejected by several courts, among them the Missouri Court of Appeals in Brake v. MFA Mutual Insurance Co., 525 S.W.2d 109 (1975), where the facts and contentions were similar to those in this case. There the court stated:
"Uninsured motorist statutes are to be liberally construed to accomplish their highly remedial purpose, which is `"`to give the same protection to the person injured by an uninsured motorist as he would have had if he had been injured in an accident caused by an automobile covered by a standard liability policy.'"'. . . Under the guise of construction, however, the courts are not at liberty to extend and enlarge the scope of the Uninsured Motorist Law by declaring an insured motorist to be an uninsured motorist, unless the statute itself clearly provides an exception to cover the case. MFA's policies afford protection against injuries, etc. inflicted by an uninsured highway vehicle. The policies define such a vehicle as one with respect to the use of which there is no bodily injury insurance applicable at the time of the accident with respect to the person legally responsible for its use. The statute relates to uninsured motor vehicles and provides no exception which would cover the case before us. Here the tort-feasor's motor vehicle was covered by a liability insurance policy which complied with the minimum requirements of the Safety Responsibility Law.
"The term `uninsured motor vehicle' as used in § 379.203, par. 1 and the term `uninsured highway vehicle' as used in the MFA policies, are not ambiguous, as claimed, but are terms of common meaning *388 and understanding. `Un' means not. An uninsured vehicle is one which is not insured. . . . Where language in an insurance policy is unambiguous and does not offend against public policy it must be accorded its plain meaning and it must be enforced as written. `For, to do otherwise would be to make a new contract for the parties * * * in contravention of the long-recognized and oft-invoked rule that "[c]ourts are without authority to rewrite contracts, even insurance contracts, although it may appear that in some respects they operate harshly or inequitably as to one of the parties. * * *"' . . .."
525 S.W.2d at 112. Accord: Simonette v. Great American Insurance Co., 165 Conn. 466, 338 A.2d 453 (1973); Detrick v. Aetna Casualty and Surety Co., 261 Iowa 1246, 158 N.W.2d 99 (1968); Kemp v. Fidelity & Casualty Co. of New York, 504 S.W.2d 633 (Tex.Civ.App.1973). See also Golphin v. Home Indemnity Co., 284 So.2d 442 (Fla. App.1973); Lund v. Mission Insurance Co., 270 Or. 461, 528 P.2d 78 (1974).
Our holding here that a vehicle, covered by a liability policy with the minimum limits prescribed by the Motor Vehicle Safety-Responsibility Act, is not an uninsured vehicle as to any injured party might, in some cases, result in the situation in which an insured under an uninsured motorist policy is better off to be injured by an uninsured motorist than by a motorist with minimum liability coverage. Such an anomaly might result where the tortfeasor injures several persons who are each insured under different uninsured motorist policies or where the tortfeasor injures one or more persons who have the coverage of several uninsured motorist policies available to them, this, because of our "stacking" decisions. See Lambert v. Liberty Mutual Insurance Co., 331 So.2d 260 (Ala.1976), and cases cited therein. Nevertheless, the law is full of anomalies, and the mere possibility of such an anomaly hardly justifies a different result than that which we reach in this case.
Here, no anomaly exists, for, as the evidence shows, there was only one uninsured motorist policy applicable to the accident. Consequently, the Insured was in exactly the same position as if Thornton had carried no liability insurance. Under Thornton's policy and under the applicable uninsured motorist policy, the per-accident limit was $20,000. Thus, we conclude, as did Justice Maddox writing for the Court in Wilbourn, supra, that the tortfeasor was not an "un insured" motorist, but was simply "underinsured" with respect to the insured's damages.
REVERSED AND REMANDED.
TORBERT, C. J., and MADDOX, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
JONES, J., dissents.
FAULKNER, J., concurs in dissent of JONES, J.
JONES, Justice (dissenting):
I respectfully dissent.
Admittedly, the question presented by this appeal is a close one. Its answer is dependent solely upon an interpretation of the Uninsured Motorist Statute; and the interpretation varies according to the eyes from whom the statute is viewed. I am reminded of the old farmer who was reluctant to pursue his claim under an accident policy for a snake bite injury because he was convinced that the snake "bit me on purpose."
The majority opinion views "uninsured motorist" from the perspective of the tortfeasor's liability coverage. So viewed, it is true that the tort-feasor had the statutory minimum coverage of 10/20. But, when viewed from the vantage point of the injured insured under the uninsured motorist coverage, the statutory phrase "for the protection of persons insured thereunder" sets the philosophical tone of the spirit and context of the Act; and, from that view, the injured plaintiff is not protected unless the uninsured motorist coverage is invoked.
FAULKNER, J., concurs.