**In re APACHE PRODUCTS COMPANY, Debtor.**

**Fidelity and Guaranty Insurance Company, Plaintiff,**

**v.**

**Employers Insurance of Wausau, et al., Defendants.**

**Bankruptcy No. 02–20896–8P1. Adversary No. 03–302.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 11, 2004.

Lori V. Vaughan, Mark J. Wolfson, W. Keith Fendrick, Foley & Lardner, Tampa, FL, for Debtor.

Denise E. Barnett, Tampa, FL, U.S. Trustee.

Mariaelena Gayo–Guitian, Adorno & Yoss, PA, Fort Lauderdale, FL, for Creditor Committee.

Rod Anderson, Noel R. Boeke, Jennifer N. Moore, Holland & Knight LLP, Tampa, FL, Patrick Barthet, Miami, FL, Lawrence Bass, Denver, CO, J. Chris Cochran, Pittman, Hooks, Dutton et al., Birmingham, AL, David N. Crapo, Gibbons, Del Deo, Dolan et al., Newark, NJ, Denise D. Dell–Powell, Akerman Senterfitt, Orlando, FL, H. Arthur Edge, III, Edge & Collins PC, Birmingham, AL, John D. Emmanuel, Fowler, White, et al., Tampa, FL, J.M. Grant, Fort Lauderdale, FL, R.J. Haughey, II, Sivyer, Barlow & Watson PA, Tampa, FL, Michael P. Horan, Akerman, Senterfitt & Eidson, P.A., Tampa, FL, Joel N. Jacobson, Somerville, NJ, F. Lorraine Jahn, Tampa, FL, Craig I. Kelley, Craig I. Kelley & Associates PA, West Palm Beach, FL, Gordon L. Kiester, Florida Department of Revenue, Mango, FL, Don-

ald R. Kirk, Fowler, White, Gillen, Boggs, et al., Tampa, FL, Kathleen S. Mcleroy, Carlton, Fields, Ward, et al., Tampa, FL, Shannon L. Novey, Office of General Counsel, Washington, DC, Lisa A. Oonk, Butler, Pappas, Weihmuller, Katz, Craig LLP, Tampa, FL, Edward J. Peterson, III, Bradley, Arant, Rose & White LLP, Birmingham, AL, Joseph E. Shickich, Jr., Ridell Williams P.S., Seattle, WA, Arnold D. Tritt, Jacksonville, FL, Jeffrey W. Warren, Bush, Ross, Gardner, Warren & Rudy, Tampa, FL, Gerald E. Wilson, Gerald E. Wilson, Inc., San Juan Capistrano, CA, for creditor.

## ORDER ON LEXINGTON INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

### (Doc. No. 43)

ALEXANDER L. PASKAY, Chief Judge.

The matter under consideration in this yet to be confirmed Chapter 11 case of Apache Products Company (Apache) is "Defendant Lexington Insurance Company's Supplemental Motion for Final Summary Judgment," filed by Lexington Insurance Company (Lexington), in the above-referenced adversary proceeding. This Adversary Proceeding was commenced by Fidelity and Guaranty Insurance Company (Fidelity) against several insurance companies as well as multiple homeowners.

In order to place the instant matter under consideration in proper focus, it should be helpful to briefly recite the factual and procedural background of the dispute between the two insurance companies. Apache is a wholly owned subsidiary of Jasper Corp. (Jasper). Apache was a distributor of a product manufactured by Dryvit Systems, Inc. known as exterior insulation and finish system (EIFS). This is a stucco-like product that was used as a decorative covering for residential homes. Fidelity issued policies to both Jasper and Apache and they are the named insureds during the relevant years.

In the mid to late 1990's and as recent as the early 2000's, Apache and Dryvit were sued by multiple homeowners in Shelby and Jefferson County, Alabama. According to homeowners, the EIFS product was defective or was negligently installed and as a result, caused water damage to their property. It appears that over 225 individual Alabama homeowners asserted claims against Dryvit and Apache. It is without dispute that Fidelity provided Apache with defense coverage pursuant to the issued policies during the relevant time.

Following the initiation of the lawsuits by the homeowners against Dryvit and Apache, a dispute arose between Apache and Fidelity as to the coverage afforded to Apache by Fidelity's policies. As a result, Fidelity filed two lawsuits in February of 2002, in Alabama state court seeking a declaratory judgment regarding the coverages afforded to Apache under the respective insurance policies issued by Fidelity. Other insurance companies that also insured Apache, as well as the homeowners, were added as defendants to the declaratory judgment actions, including Lexington.

Apache then filed for Chapter 11 relief on October 22, 2002. Ultimately, the two state court actions were removed by Fidelity to this Court, which now bears Adversary Proceeding Number 03–302. It appears that following several hearings before this Court regarding the removal and transfer of the state court actions to the bankruptcy court, the entire record for both state court actions is now housed with this Court's Clerk of the Court.

Prior to the initiation of the bankruptcy case of Apache, on September 24, 2002, Lexington, in the state court action initiated in Jefferson County, Alabama, filed its original Motion for Summary Judgment. Following the Chapter 11 filing of Apache, Lexington filed this Supplemental Motion for Summary Judgment in the above-referenced adversary proceeding, which is the immediate matter under consideration. The Supplemental Motion was duly scheduled for hearing, at which time this Court heard oral argument by the respective parties.

Not having been satisfied with the initial arguments presented at the hearing, this Court directed the parties to brief and submit their respective positions with supporting authorities on the four specific issues: First, whether the claims of the homeowners relate solely to negligent installation and not to the alleged defects in the Dryvit product itself, and therefore are not subject to the $100,000 Self Insured Retention (SIR) but only subject to the separate $2,000,000 aggregate limit per policy. Second, whether the duty to defend and reimburse all indemnity and defense expenses incurred by Fidelity on behalf of Apache in connection with the suits filed by homeowners is triggered only after the SIR has been paid or triggers immediately upon the claims asserted. Third, whether or not the claims asserted in Alabama by the homeowners are each single claims or constitute one aggregate single claim. And, fourth, what part of the record would enable this Court to determine the basis of the claims asserted by the homeowners in Jefferson and Shelby Counties, i.e., whether they are based on defects in the Dryvit EIFS product or negligent installation of the same. *See*

Order Scheduling Additional Oral Arguments on Lexington Company's Supplemental Motion for Summary Judgment (Doc. No. 197) entered on December 3, 2003.

In compliance with the Order, Lexington submitted a supplemental memorandum in support of its Supplemental Motion for Summary Judgment and subject to the receipt of the submission; this Court heard additional arguments, and now finds and concludes as follows.

The dispute between the parties centers around the language in the Lexington insurance policies regarding the Self Insured Retention, referred to as SIR. Accordingly, it is relevant to first review the exact language of the Lexington insurance policies issued to Apache. Lexington issued two "claims made" policies: (1) Policy Number 6471037 for the December 31, 1999 to December 31, 2000 policy period and (2) Policy Number 6476534 for the December 31, 2000 to December 31, 2001 policy period. ¶ 3 of Original Motion for Summary Judgment.[1]

The provisions that deal with the SIR are as follows:

*ENDORSEMENT # 002 SELF INSURED RETENTION—PER CLAIM*

It is agreed that:

1. The Company's obligation, under the coverages provided by this policy, to pay "Ultimate Net Loss" on behalf of the "Insured", applies only to the "Ultimate Net Loss" in excess of the Self Insured Retention stated below, and subject to the Limits of Liability stated in the policy. The terms of this policy including those with respect to the Company's rights and duties with respect to defense of

---

1. The original Motion for Summary Judgment filed by Lexington in the State Court Action

shall be referred to as "MSJ."

suits apply in excess of the application of the Self Insured Retention amount.

2. The "Insured" shall immediately notify the Company in writing of any "Claim" to which this policy applies which

   a) involved serious "Bodily Injury" or fatality;

   b) the "Insured" has received notice of suit in which the damage demand exceeds the Self Insured Retention;

   c) may exceed 25% of the Self Insured Retention.

3. The "Insured" shall at all times maintain a Company approved claims handling service with respect to the Self Insured Retention.

4. The Self Insured Retention stated below shall apply to the coverages afforded by this policy on a "Per Claim" basis, and applies under the Bodily Injury Liability or Property Damage Liability Coverage, respectively, to "Ultimate Net Loss" because of "Bodily Injury" sustained by one person, or to all "Property Damage" sustained by one person or organization, as a result of any one "Occurrence".

Self Insured Retention:

   See endt 3 per "Claim" including expenses.

*ENDORSEMENT # 003 SELF INSURED RETENTION AMENDMENT*

It is hereby understood and agreed that the Self Insured Retention Amount shown on Endorsement # 002 is to read as follows:

$10,000. each and every claim including expenses, applicable to claims arising out of premises, products other than Dryvit, personal and advertising injury, and fire damage.

$100,000. each and every claim including expenses, applicable to claims arising out of the Dryvit product.

All other terms and conditions remain unchanged.

*See* ¶s 5 & 6 MSJ.[2]

■ This Court is satisfied that the first, third and fourth questions posed by this Court in its December 3rd Order can be dealt with together, inasmuch as the issues are interrelated. Those issues are whether the claims are based upon negligent installation or product defect; whether the claims constitute one single aggregate claim or are each separate claims; and whether there are record citations to support the alleged claims of the homeowners. The answers to these issues involve whether or not the SIR must be paid for every single claim or just once and whether or not the SIR is even applicable.

In order to determine whether the claims asserted by the homeowners in Alabama relate solely to negligent installation or to a defect of the Dryvit product, the parties are in agreement that this Court can consider the proofs of claim actually filed by the homeowners. Following review of a handful of claims, the record is clear that some of the homeowners do not distinguish between the two, assert both, or assert one or the other.

For instance, in the Proof of Claim filed by Connie Birk (POC # 407), she attaches a copy of the complaint she filed against Apache and Dryvit, where she alleges that the Dryvit stucco product was defective,

---

**2.** See also, Affidavit of Philip McGinty, Senior Claims Examiner for Lexington, Exhibits A & B, which are true and correct copies of Endorsements # 002 and # 003. (Doc. No. 59). The Affidavit was filed in support of the Supplemental Motion for Summary Judgment.

that it was defectively designed and that the defendants failed to warn her of the deficiencies in the EIFS or the risk associated with using EIFS. She further alleges that the defendants had a duty to disclose to her that the product had a defect that would lead to property damage; therefore they breached their duty. Alan and Jeri Davis (POC # 377) also allege in paragraph 15 of their complaint that EIFS was defective and used the same language as identified in the complaint of Connie Birk. Again, the Proof of Claim filed by Bill and Mary Smith (POC # 379) also alleges that EIFS was defective and that the defendants breached the implied warranty of fitness and EIFS was not fit to be used as an exterior cladding system. None of these claims make a distinction between product defect and negligence claims.

According to Lexington, regardless of whether or not the claim asserted is negligence or product defect, the policy language dictates that the $100,000 SIR is applicable to any of the claims because the negligence claim "arises out of" the Dryvit product. As set forth in Endorsement # 003, *supra*, the $100,000 SIRA is "applicable to claims *arising out of* the Dryvit product." (Emphasis supplied).

As noted in this Court's December 3rd Order, this Court determined that Alabama law applies to this issue. In order to determine whether the $100,000 SIR is applicable to these claims, this Court must construe the language of the insurance policy according to its plain meaning, as well established under Alabama law. *See Wakefield v. State Farm Mutual Automobile Insurance Co.*, 572 So.2d 1220, 1223 (Ala.1990).

█ In the case of *Criterion Ins. Co. v. Anderson*, 347 So.2d 384, 388 (Ala.1977), the court stated, "Where the language in an insurance policy is unambiguous and does not offend against public policy, it must be accorded its plain meaning and it must be enforced as written.... For, to do otherwise would be to make a new contract for the parties ... in contravention of the long-recognized and oft-invoked rule that 'courts are without authority to rewrite contracts, even insurance contracts, although it may appear that in some respects they operate harshly or inequitably as to one of the parties.' " *Id.* It is equally true however, that insurance policies must be construed liberally in favor of the insured and strictly against the insurer. *American States Ins. Co. v. Martin*, 662 So.2d 245 (Ala.1995).

In the instant case, the portion of the policy that deals with SIR states that $100,000 relates to *each and every* claim including expenses applicable to the claims *arising out of* the Dryvit product. (Emphasis supplied). It cannot be urged with any degree of persuasion that the terms "each" and "every" as used in the language of the SIRA of the Lexington policy would not include any and all conceivable claims arising out of the Dryvit product, including negligence claims.

In the case of *Tiano v. Aetna Casualty and Surety Co.*, the court rejected the plaintiff's argument that negligent installation of the product was not within the product hazard exclusion and only claims that claimed the product was defective would be within the product hazard exclusion. 102 Mich.App. 177, 301 N.W.2d 476 (1980). Also, in the case of *Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Insured Co.*, 220 F.3d 1 (1st Cir.2000), the First Circuit Court of Appeals considered the applicability of product hazard exclusion similar to that in the case of *Tiano*. The court in *Brazas* concluded that the products-completed operations hazard included in plain and unambiguous language "all bodily injury and property damage occurring away from the

premises you own or rent and *arising out of your product." Id.* (Emphasis supplied).

This Court is not unmindful of the case of *United States Fidelity and Guaranty Co. v. National Tank & Machine Works, Inc.*, 402 So.2d 925 (Ala.1981). In *National Tank*, the court found coverage because the specific product hazard exclusion did not apply by the very terms of the policy relating to uninstalled equipment. The court noted that under the policy definitions, the completed operations or hazard exclusion did not include bodily injury arising out of the failure to install the proper equipment, which was uninstalled.

Since the Alabama Supreme Court's decision of *National Tank*, neither research of counsel nor independent researched discovered any other cases dealing with the issues in this instance case directly on point. Therefore this Court is satisfied that based on *Wakefield, Criterion, Tiano,* and *Brazas*, that the SIR applies to each and every claim of the homeowners, whether or not they are based upon negligent installation or alleged product defect. It is evident from the record that the claims arose out of the Dryvit product and but for the product, there would not have been any basis to assert a claim for negligent installation.

■ This leads to the third issue, which is whether or not the claims asserted are each a single claim or constitute one aggregate claim, whereby only one $100,000 SIR payment is applicable. Again, this Court must construe the language of the Lexington policy. Endorsement # 002 states, "The Self Insured Retention stated below shall apply to the coverages afforded by this policy on a 'Per Claim' basis, subject to the $100,000 limit."

In construing the term "per claim," Lexington cites to numerous cases that distinguish between the terms "per claim" and

"occurrence." In *General Casualty of Wisconsin v. Diversified Painting Service Inc.*, 603 N.E.2d 1389 (Ind.App.Ct.1992), the Indiana court of appeals explained the difference between an "occurrence" and a "claim" arising out of an occurrence. The court stated that the term occurrence, as defined in the policy was "an accident, including continuous or repeated exposure to substantially the same general harmful condition," as opposed to the term "claim," which was not defined by the policy but in the dictionary means "a demand for something due or believed to be due." Therefore, the court stated that within an occurrence, in that case, the spraying of paint upon about eighty automobiles, as opposed to the water tower that the insured was hired to paint, more than one claim could arise. This Court is satisfied that the terms have distinct meanings in this case and that the policy is clear that each homeowner's claimed damage must be treated as separate claims and not as one aggregate claim.

The fourth issue posed by this Court is what reference to the record can this Court rely upon to determine the matter under consideration. The parties are in agreement that the proofs of claim as filed by the homeowners constitute sufficient evidence for this Court to rely upon to determine the alleged damage amounts asserted by the individual homeowners.

This leaves for consideration the final issue which is the second issue: Whether Lexington's duty to defend and reimburse all indemnity and defense expenses incurred by Fidelity on behalf of Apache in connection with the suits filed by homeowners in Shelby and Jefferson Counties, Alabama is triggered only after the SIR has been paid or whether it is triggered immediately when a claim is asserted.

Initially, this Court is satisfied that in order for the Lexington's policy to be implicated or triggered, the underlying homeowner claim must exceed $100,000.[3] Accordingly, this Court is satisfied that for asserted claims that are less than $100,000, Lexington does not have a duty to defend or indemnify. Therefore, the claims from homeowners such as Bobby Mann (POC # 160, $160,604) and Rick and Susan Turner (POC # 314, $208,429) could potentially be covered under Lexington's policy, with respect to satisfaction of the "excess amount." However, claims such as Gary Parisher (POC # 166, $39,970) and Mary Quintero (POC # 168, $10,412.95)[4] would not be covered under Lexington's policy because the claim is not in excess of the $100,000 base line.[5] Accordingly, this Court is satisfied that claims in excess of the SIR could potentially be covered under the Lexington policy.

In its post-submission briefs, Lexington asserts that in order for there to be a duty to defend, the SIR must be exhausted and satisfied, that is, the claim must exceed $100,000 and must be paid by the insured before there is any duty on behalf of Lexington to defend and indemnify. In support of this proposition, Lexington cites to the case of *T.Y. Lin International v. Hyundai Marine & Fire Insurance Co.*, 1997 WL 703778 (N.D.Cal. 1997).

In *T.Y. Lin*, Hyundai Engineering & Construction Co. (H.Engineering) sued T.Y. Lin, the insured, for negligence, error and omissions relating to its design and engineering work for a bridge it built. The claim asserted by H. Engineering was in excess of $80 million. Hyundai Marine & Fire Insurance Co. (Hyundai Insurance) denied any obligation to commence paying for defense costs on behalf of T.Y. Lin based upon its $1 million retention that had to be exhausted before its duty to defend and indemnify would be made. T.Y. Lin filed an action against Hyundai Insurance seeking declaratory judgment that the SIR was unenforceable, or in the alternative if it was enforceable, that Hyundai Insurance pay first and be reimbursed later, or that T.Y. Lin had exhausted the $1 million retention.

T.Y. Lin argued that the retention was unenforceable because the language was ambiguous. The district court looking at the plain language of the policy rejected T.Y. Lin's assertion that there was any ambiguity and determined that the retention was enforceable. Similar to this case, Fidelity originally argued that the language in the Lexington policy was ambiguous; however, this Court squarely rejects this argument. The language in the Lexington policy is clear and unambiguous. This Court is satisfied that the SIR is enforceable.

This leaves for consideration, whether or not the SIR must be *exhausted* in order for the duty to arise. The district court, looking at California state law, made this statement: Where there is a retention in a

---

**3.** *See* Endorsement # 002: "The Company's obligation, under the coverages provided by this policy, to pay 'Ultimate Net Loss' on behalf of the 'Insured', applies only to the 'Ultimate Net Loss' in excess of the Self Insured Retention stated below..." Endorsement # 003: "$100,000. each and every claim including expenses, applicable to claims arising out of the Dryvit product."

**4.** Although on the face of the proof of claim, the amount asserted is $10,412.95, the attachment to the claim asserts an amount of $35,912.95. Regardless, the amount asserted is less than the $100,000 amount.

**5.** It should be noted that these proofs of claim are used for discussion purposes only and this order should not be construed as to a finding that the Lexington policies would cover these claims.

policy, no duty to defend arises until the insured has demonstrated that the retention has been exhausted. *T.Y. Lin*, 1997 WL 703778 at *3, *citing General Star Indemnity Co. v. Superior Court*, 47 Cal. App.4th 1586, 55 Cal.Rptr.2d 322 (1996). The problem with this term "exhausted" is that in *T.Y. Lin*, the district court did not recite verbatim the language at issue in that case. Instead, the district court reviewed the language in the Hyundai Insurance policy and determined that T.Y. Lin had not exhausted the retention. *Id.* at *5.

In *General Star*, the California appellate court citing to the exact language involved in that case, noted that the SIR endorsement eliminated the duty to defend and replaced it with a contingent duty, per the specific language in that policy. *General Star*, 47 Cal.App.4th at 1590, 55 Cal. Rptr.2d 322. Thus, the appellate court determined that the policy had to be enforced according to its plain terms, which in General Star, required the insured as a condition precedent to coverage to exhaust the SIR.

In opposition to Lexington's position and its reliance on *T.Y. Lin*, Fidelity heavily relies on the case of *Liberty Mutual Insurance Company v. Wheelwright Trucking Company*, 851 So.2d 466 (Ala.2002). In *Wheelwright*, under the facts presented to the Alabama Supreme Court, the court determined that payment of a SIR would not be viewed as a condition precedent to the insurers' obligation under the policy, and would act as a setoff when the insured was in bankruptcy, since the policy contained an exception when the insured was in bankruptcy. A brief summary of the relevant facts in *Wheelwright* is as follows.

Wheelwright purchased trailers from Dorsey, which was ultimately found to be defective. Wheelwright sued Dorsey on a variety of causes of action. Dorsey's insurance companies sought declaratory judgment that their policies did not require them to provide coverage to Dorsey. Dorsey filed for Chapter 11 bankruptcy protection. During the pendency of the Chapter 11 case, Dorsey settled with Wheelwright, which ultimately culminated into a judgment against Dorsey and in favor of Wheelwright. Wheelwright sought to impose writs of garnishment against the insurance companies of Dorsey.

The insurance companies asserted that Dorsey did not pay the SIR amount as provided for in their policies, and therefore, the lower court had erred in stating that the SIR had been exhausted; however the Alabama Supreme Court determined that since the consent judgment exceeded the $250,000 retention at issue, the satisfaction to trigger coverage was moot and the insured was allowed a set off against the insured debtor for the SIR.

The facts in *Wheelwright* are distinguishable from the facts in the instance case inasmuch as the record does not reflect that there has been an adjudication against Apache that is in excess of the $100,000 SIR. Also in *Wheelwright*, the insured debtor Dorsey had attempted to tender payment of the SIR in order to trigger coverage, a fact that has not occurred in this case. And finally, the specific language in the policy provisions in *Wheelwright* differs from the language in the Lexington policy.

Finally, in its last analysis, this Court's acknowledges that its own research regarding the exhaustion of a SIR found few if any published cases on point and several unpublished opinions. In the case of *Beloit Liquidating Trust v. Century Indemnity Company*, 2002 WL 31870525 (N.D.Ill.2002), Beloit sued Century alleging breach of a duty to defend based upon Century's denial to defend the underlying lawsuit involving Beloit. Century argued

that the SIR language made the policy an excess policy with no duty to defend Beloit but only to pay legal expenses as part of the ultimate net loss after the SIR had been exhausted. *Id.* at *1. After reviewing the exact language of the policy, the court agreed with Century that the plain language of the SIR dictated that Beloit pay the SIR amount for claims before Century's liability under the policy is triggered. *Id.* at *2. It should be noted that "Beloit" is actually Beloit Liquidating Trust, which was created pursuant to the confirmed chapter 11 case of Beloit Corporation. Moreover, the court ultimately denied summary judgment in favor of Century because there was a genuine issue of material fact regarding whether the injury could be traced to a time that would implicate coverage under Century's policies. *Id.* at *3.

Based upon the foregoing authority, this Court turns to the precise language in the Lexington policy in order to determine whether or not the SIR must be exhausted to trigger Lexington's duty to defend and indemnify. In the Endorsement # 002, the Lexington policy states:

> The Company's obligation, under the coverage provided by this policy, to pay "Ultimate Net Loss" on behalf of the "Insured", applies only to the "Ultimate Net Loss" *in excess of* the Self Insured Retention stated below...The terms of this policy including those with respect to the Company's rights and duties with respect to defense of suits apply *in excess of the application* of the Self Insured Retention amount.

(Emphasis supplied). "Ultimate Net Loss" is a defined term within the policy which means "the total sum which the Insured, or the Company as its insurer, or

both, become legally obligated to pay by reasons of damages covered by this policy, either through adjudication or compromise . . . and shall also include all sums included within the Defense and Related Payment provision."

Finally, the Defense and Related Payment provision, which is section V. of the policy provides in pertinent part as follows: "The Company will pay, as part of and not in addition to the applicable limit of liability: A. all expenses incurred by the Company, in any suit defended by the Company and all costs taxed against the Insured in such suit. . . ."

This Court is satisfied that a plain reading of the Lexington policy leaves little doubt that Lexington has an obligation to *pay* when Apache becomes legally obligated to the third-party through an adjudication or compromise, and when the amount is in excess of the $100,000. The difficulty arises regarding the discrete and narrow issue of whether Lexington has a duty to defend if the asserted claim is in excess of $100,000.

Endorsement # 002 states that Lexington's duty "with respect to defense of suits apply in excess of the *application* of the [SIR] amount." (Emphasis supplied). Unfortunately, the courts in Alabama have not addressed this exact issue on point but it appears in the limited cases regarding this discrete and narrow issue, one cannot escape the plain language of the Lexington policy. Apache must exhaust the SIR amount before Lexington's obligation to defend arises. The record evidence submitted by the parties does not demonstrate that Apache has exhausted the $100,000 SIR.[6]

---

**6.** In response to discovery served upon Apache, Apache states in its response to Lexington Insurance Company's First Interroga-

tories to Apache, dated September 12, 2003 that "To date there have been no self insured retention expenditures. If self insured reten-

However, this Court is equally satisfied that the issue is not ripe for consideration of whether or not *Wheelwright* is applicable once there is an adjudication against Apache in excess of the $100,000 SIR as set forth in the Lexington policies for which Apache is unable to "apply" or "exhaust" as a result of its filing for Chapter 11 relief and what effect, if any the filing of the bankruptcy case has on this provision of the Lexington policy.

A separate final judgment shall be entered in accordance to the foregoing.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Defendant Lexington Insurance Company's Supplemental Motion for Final Summary Judgment be, and the same is hereby, granted.

tion expenditures are incurred, Apache will provide the names, telephone numbers and addresses of all persons at Apache handling such claims." *See* Notice of Filing Discovery, filed by Lexington on October 8, 2003 (Doc. No. 88).